UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

Donald Anthony Yacos and  
Alice Christina Yacos,

                Debtors.
_____/

Lee Wholesale Supply, Inc.,

                Plaintiff,

vs.

Donald Anthony Yacos and  
Alice Christina Yacos,

                Defendants.
_____/

Case No. 06-57645  
Chapter 7  
Hon. Phillip J. Shefferly

Adv. Pro. No. 07-4198

**OPINION DENYING DEBTORS' MOTION TO  
DISMISS AND FOR SUMMARY JUDGMENT**

I. Introduction

This is a non-dischargeability action brought under § 523(a)(4) of the Bankruptcy Code. The Plaintiff, Lee Wholesale Supply, Inc., seeks a determination of a non-dischargeable debt owing by the Debtors, Donald Anthony Yacos and Alice Christina Yacos, based upon their liability to the Plaintiff under the Michigan Building Contract Fund Act, Mich. Comp. Laws Ann. § 570.151 et. seq. ("MBCFA"). The specific issue addressed by this opinion pertains to the meaning of the phrase "building construction industry" as it is used in the MBCFA. For the reasons set forth in this opinion, the Court denies the Debtors' motion to dismiss and motion for summary judgment.

II. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core

proceeding under 28 U.S.C. § 157(b)(2)(I).

III. Facts

On November 29, 2006, Donald Anthony Yacos and Alice Christina Yacos filed a joint Chapter 7 petition. Prior to filing bankruptcy, Mr. Yacos was a shareholder, officer and director in a Michigan corporation formed in 2000 and known as Don Anthony Builders, Inc. ("DAB"). DAB was in the roofing business. The Debtors both worked for DAB. According to Mr. Yacos' unsworn declaration filed in this adversary proceeding, DAB "was in the business of repairing and replacing roofs for residential houses . . . [and] also installed siding and gutters. Nearly all of its business was roofing and gutter repair and replacement on existing houses." Mr. Yacos' declaration also states that DAB "was not involved in building construction" and that "none of the purchases" for which money is owed to the Plaintiff "related to construction." DAB ceased its business operations shortly before the Debtors filed their Chapter 7 bankruptcy case.

According to an affidavit filed by Daniel Wrobleski, an employee of the Plaintiff, DAB purchased materials from the Plaintiff from 2002 through September, 2005 at which time the Plaintiff stopped selling to DAB. At that time, DAB was indebted to the Plaintiff in the amount of $297,464.36. According to Wrobleski's affidavit, the materials sold by the Plaintiff to DAB "included roofing and related products, lumber and sky lights." Mr. Yacos' affidavit acknowledges that DAB purchased goods from the Plaintiff and states that the goods "were primarily roofing materials, . . . [and] . . . DAB may have occasionally purchased siding" from the Plaintiff.

The Plaintiff alleges in its complaint in this adversary proceeding that the Debtors are personally liable to the Plaintiff for $297,464.36 and that such debt is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" and therefore non-dischargeable under

-2-

§ 523(a)(4). The Debtors filed a motion to dismiss or for summary judgment on several grounds. The Court held a hearing on the motion on May 18, 2007. At the conclusion of the hearing, the Court granted in part and denied in part the Debtors' motion. However, the Court took one issue raised by the Debtors' motion under advisement. That issue pertains to the Debtors' contention that DAB's "business of repairing and replacing roofs for residential houses" is not within the "building construction industry" under the MBCFA and the MBCFA is therefore inapplicable. This opinion addresses only that issue

IV. Applicable Standards

The Debtors ask for dismissal under Fed. R. Civ. P. 12(b)(6), incorporated by Fed. R. Bankr. P. 7012. In deciding a motion to dismiss for failure to state a claim upon which relief may be granted,

> [t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief. A court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations.

Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001) (citations omitted). "A motion to dismiss under Rule 12(b)(6) should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Beztak Land Co. v. City of Detroit, 298 F.3d 559, 565 (6th Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

In the alternative, the Debtors request summary judgment under Fed. R. Civ. P. 56(c), incorporated into Fed. R. Bankr. P. 7056c. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (1986). A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Reiger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 447 U.S. at 248).

V. Discussion

The MBCFA provides as follows:

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

Mich. Comp. Laws Ann. § 570.151. (emphasis added).

Although there are many decisions by Michigan courts under the MBCFA and by bankruptcy courts in Michigan adjudicating § 523(a)(4) actions based upon the MBCFA, there are relatively few cases that discuss what is meant by the phrase "building construction industry" as used in the MBCFA. There is no definition for that phrase contained in the MBCFA.

As the Debtors point out, the first reported decision that discussed the meaning of this phrase was Chrystler v. South Bend Supply Co. (In re Skilled Trades), 1 B.R. 396 (Bankr. W.D. Mich. 1979). In Skilled Trades, the debtor required materials for an air conditioning job at a small church. The defendant agreed to ship the materials to the site of the church and the debtor would pay the defendant once it was paid by the church. After the debtor filed bankruptcy, the trustee sought to recover the debtor's payment to the defendant as a preferential transfer. To ascertain whether the

-4-

funds used to pay the defendant were trust funds, the court examined the MBCFA. The specific issue framed by the court was "whether the project in question was included in the building construction industry" under the MBCFA. 1 B.R. at 400. After posing the question, "What is the building construction industry?" the Skilled Trades court reviewed various dictionary definitions of "building" and focused on the "business of constructing buildings." Ultimately, the Skilled Trades court held that the words "building construction industry" did not "encompass the sale of air conditioners to a small church such as we have in this case." Id. However, in reaching that conclusion, the court observed that "there was no testimony as to the scope of the installation work on the church site" and that "the amount reserved for installation costs was nominal." Id.

The Skilled Trades holding has not been followed by any Michigan court. The only citation to it for its discussion of "building construction industry" is Paloian v. Quad-Tech, Inc. (In re GGSI Liquidation, Inc.), 313 B.R. 770 (Bankr. N.D. Ill. 2004). The court in that case held that the installation of printing equipment in an existing building is not within the "building construction industry" under the MBCFA because the act only "protects members of the 'building construction industry,' meaning the industry that constructs buildings." Id. at 779.

The only other opinion cited by the Debtors in support of their view of the "building construction industry" is an unpublished opinion from the Macomb County Circuit Court, AKM Trucking, Inc. v. Petro Environmental Technologies, Inc, No. 2004-4081-CK, 2005 WL 525156 (Mich. Cir. Ct. Mar. 3, 2005). In that case the court found that the building of a road to a landfill does not involve the building construction industry and therefore the MBCFA is inapplicable. Id. at *2.

Relying upon Skilled Trades, GGSI and AKM Trucking, the Debtors argue that the phrase

"building construction industry" as used in the MBCFA requires construction of a new building and does not encompass repair or replacement of a roof on an existing structure. Because DAB was only in the "business of repairing and replacing roofs for residential houses," the Debtors assert that the MBCFA is inapplicable. The Court rejects that assertion for several reasons. First, there is nothing on the face of the MBCFA that limits its application to a new structure rather than an existing structure. Second, there is nothing about the common everyday meaning of either "building" or "construction" that suggests such a limitation. "Building" is defined as "a constructed edifice designed to stand more or less permanently, covering a space of land, [usually] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure." Webster's Third New Int'l Dictionary (Unabridged) at 292 (2002). Certainly, an existing home is just as much a building as a new home under this definition. "Construction" is defined as "the act of putting parts together to form a complete integrated object." Id. at 489. Existing residential homes, like other buildings, have roofs. Repairing and replacing roofs requires one to put the parts together to form the complete integrated object (i.e., the building). That the roof being repaired or replaced happens to be constructed on an existing home rather than a new home does not make it any less an act of construction of a building. Using the ordinary, everyday meaning of the words "building" and "construction," it is hard to conceive that repairing and replacing roofs on existing homes is not within the "building construction industry."

Third, the cases cited by the Debtors are all factually inapposite. Skilled Trades involved only the sale and shipment of an air conditioner to a church where there was not even any evidence of any installation work. GGSI involved the sale and installation of printing equipment in an existing building. AKM involved the building of a road. None of these cases involved repairing and replacing

-6-

07-04198-pjs    Doc 18    Filed 06/27/07    Entered 06/27/07 12:53:22    Page 6 of 11

roofs. Further, none of these cases discussed any construction or other work that was actually done to a building structure. In that sense, they are easily distinguishable from the case at bar where there is uncontroverted evidence that DAB performed repair and replacement of roofs to existing structures. Repairing and replacing a roof on an existing structure is an improvement to a building that obviously requires work both on and to the structure itself. The same clearly cannot be said for the projects at issue in Skilled Trades and AKM, neither of which involved any work done to a structure. While GGSI may have involved installation of printing equipment in a structure, the opinion does not indicate that there was any work done to the structure itself. The Debtors' cases are all distinguishable and involve activities far more remote from the construction of a building than the facts in the case before this Court.

Fourth, it is important to note that none of these cases was decided by either the Michigan Supreme Court or the Michigan Court of Appeals. Although decided by a Michigan court, AKM is an unpublished trial court opinion that has no precedential value, and stands only for the unremarkable proposition that the construction of a road is not in the building construction industry. Further, although the bankruptcy court decided Skilled Trades nearly three decades ago, it has never been cited even a single time by a Michigan court as setting forth the proper definition of "building construction industry" for the purposes of MBCFA. The only citation to its definition was by the bankruptcy court in GGSI, which cited no other Michigan case law in support of this definition.

Finally, and most importantly, to the extent that these cases support the Debtors' interpretation of "building construction industry" as somehow being limited to the construction of new buildings, their narrow definition is at odds with Michigan case law. Michigan courts and federal courts construing Michigan law have applied the MBCFA to a variety of situations that go beyond

construction of a new building. Many cases have addressed a project consisting of the construction of a new building. See, e.g., Condaire, Inc. v. Allied Piping, Inc., 286 F.3d 353 (6th Cir. 2002) (applying the MBCFA to installation of piping in the construction of an automotive assembly plant). However, other cases have applied the MBCFA in much a broader context. In Michigan v. Miller, 259 N.W.2d 877, 879 (Mich. Ct. App. 1977), the court affirmed criminal liability under the MBCFA based on "the aborted sale of a swimming pool" to homeowners. In In re McMullen, 189 B.R. 402, 403 (Bankr. E.D. Mich. 1995), the court applied the MBCFA to a project for "certain improvements" to a private home. Many decisions have applied the MBCFA with little or no discussion of the nature of the project and whether the project involved constructing a new building or work done to an existing building. See Architectural Building Components v. McClarty (In re Foremost Manufacturing Co.), 137 F.3d 919 (6th Cir. 1998) (manufacture and delivery of louvers for a "building project"); Selby v. Ford Motor Co., 590 F.2d 642, 644 (6th Cir. 1979) (debtor "buil[t] and install[ed] conveyors at a Ford plant in New Jersey"); Accu-Tech Corp. v. Jackson, 352 F. Supp. 2d 831, 832 (E.D. Mich. 2005) (applied to factoring agent of "contractor" who purchased "products related to voice, video, and data network infrastructures" for "various projects"); Distral Energy Corp. v. Michigan Boiler & Engineering Co. (In re Michigan Boiler & Engineering Co.), 171 B.R. 565 (Bankr. E.D. Mich. 1993) (manufacture and/or sale of boiler and components at a paper company "facility"); Construction Pipe Co. v. Mahon Industrial Corp. (In re Mahon Industrial Corp.), 20 B.R. 833 (Bankr. E.D. Mich. 1982) (labor and materials to install machine at an assembly plant).

The Michigan Court of Appeals recently addressed the "building construction industry" under the MBCFA in an unpublished opinion. In Allied Mechanical Services, Inc. v. DR&W Engineering & Design, Inc., No. 266165, 2007 WL 866474 (Mich. Ct. App. Mar. 22, 2007), the "project" was

a survey of an existing compressed air piping system. Pfizer had contracted with the defendant to create drawings of the system. The plaintiff provided the leak-testing portion of the existing system. The defendant argued that the leak-testing conducted by the plaintiff did not constitute "building construction" withing the MBCFA. The Michigan Court of Appeals disagreed and held that the plaintiff's leak-testing was within the "building construction industry." In so finding, the court first quoted the liability provision of the MBCFA, which covers contractors and subcontractors "'engaged in the building construction business,'" who fail to pay for labor or materials "'for the specific improvement.'" Allied Mechanical at *1 (quoting Mich. Comp. Laws Ann. § 570.152). After noting that the MBCFA contains no definitions, the court looked to the Michigan Construction Lien Act because it is *in pari materia* with the MBCFA. Id. at *2. The Construction Lien Act defines "improvement" as including "'surveying, engineering and architectural planning, construction management, . . . altering, repairing, . . . landscaping, . . . or installing or affixing a fixture . . . .'" Id. (quoting Mich. Comp. Laws Ann. § 570.1104(7)). The court then applied the definition of "improvement" from that act and concluded that the leak detection work done by the plaintiff was an "improvement" and therefore covered by the MBCFA. Id. In reaching its conclusion, the court did not read "building construction industry" as being limited to the construction of a new building, as the Debtors urge.

The concurring opinion in Allied Mechanical also makes an important point, albeit in the context of addressing a different issue under the MBCFA. Judge Murray wrote separately to convey his concern that the MBCFA does not expressly provide a civil cause of action against contractors. Despite these reservations, in light of well established precedent recognizing such a cause of action, Judge Murray concurred:

> In my view, the act does not provide a cause of action against an individual, or for that matter, any private cause of action, but because precedent holds that it does, I must concur in the conclusion that the individual defendants are subject to liability under the act.
>
> . . .
>
> In my view, if we were writing on a clean slate, I would hold that the individual defendants are not liable as a matter of law because plaintiffs would not have a private cause of action against them. However, as noted by the DiPonio Construction Co. Court, we are not writing on a clean slate. I therefore concur in the affirmance of the trial court's decision.

Allied Mechanical Services, 2007 WL 1202175 at *1 (Murray, J., concurring) (citing DiPonio Co. v. Rosati Co., 631 N.W.2d 59 (Mich. Ct. App. 2001)).

This concurring opinion by the state's second highest court underscores the importance of following precedent in applying the MBCFA. It is true that this was an unpublished opinion and that Michigan Appellate Rule 7.215(C) provides that "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis." However, in deciding the issue before it today, this Court's task is to make its "best prediction" of how the Michigan Supreme Court would rule on the issue of what constitutes the "building construction industry." See Combs v. International Insurance Co., 354 F.3d 568, 577 (6th Cir. 2004) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)) (other citations omitted). In this context, it is appropriate for this Court to look to the unpublished opinion from the Michigan Court of Appeals for guidance, if not necessarily for binding authority.

VI. Conclusion

No Michigan court has ever held that the "business of repairing and replacing roofs for residential homes" is not within the "building construction industry." No Michigan court has ever held that "building construction industry" under MBCFA applies only to the construction of a new building. No Michigan court has ever read "building construction industry" as narrowly as the

Debtors would have this Court do. The strongest indications of how the Michigan Supreme Court would decide the issue before the Court appear in the Allied Mechanical opinion and in the Michigan Court of Appeals case Michigan v. Miller. Neither of these cases involved the construction of a new building. In sum, the Court is not persuaded that "repairing and replacing roofs on residential homes" is not within the scope of the "building construction industry" or that the Michigan Supreme Court would so hold. Bearing in mind that the MBCFA is a remedial act to be construed liberally, Michigan v. Brown, 610 N.W.2d 234, 238 (Mich. Ct. App. 2000), based on the record before it the Court cannot conclude that there is no genuine issue of material fact and that DAB's "business of repairing and replacing roofs for residential houses" was not in the "building construction industry." Nor can the Court conclude that "'it appears beyond doubt that [Plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief'" based on a violation of the MBCFA. Beztak Land Co. v. City of Detroit, 298 F.3d 559, 565 (6th Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Accordingly, the Debtors' motion is denied. The Court will enter a separate order consistent with this opinion.

**FOR PUBLICATION**

**Signed on June 27, 2007**

                                            **/s/ Phillip J. Shefferly**
                                            **Phillip J. Shefferly**
                                            **United States Bankruptcy Judge**